Mary Alice VARNADO et al., Appellants,

v.

CITY OF GROVES, Appellee.

No. 16073.

Court of Civil Appeals of Texas.

Fort Worth.

Oct. 30, 1959.

Rehearing Denied Nov. 27, 1959.

Adams & Browne, and Ernest J. Browne, Beaumont, for appellants.

Black & Lindsey, and W. C. Lindsey, Port Arthur, for appellee.

RENFRO, Justice.

The City of Groves brought condemnation proceedings against Mrs. Varnado and her three sons to secure an easement for the construction and maintenance of a drainage ditch on land belonging to defendants. The land consisted of 7 plus acres and had a frontage of 252.86 feet on a public highway and a depth of 1,260 feet. The easement sought was a strip, along the side of defendants' land, 30 by 1,260 feet. Subsequently the City dug a ditch 14 feet wide at the top and 4 feet wide at the bottom, with depths of 2 to 3½ feet. The land involved had a sea level elevation of 2.6 to 5.2 feet.

The jury found the value of the land taken to be $4,730. Neither side complains of that finding.

The jury found in answer to issues Nos. 2 and 3 that the remainder had a value of $33,500 before the taking and $33,500 after the taking. In other words, the jury found in effect that the remainder was not diminished in market value by the taking of the easement strip.

Appellants, the land owners, in ten related points contend there was no evidence and insufficient evidence to support the jury's answers to issues Nos. 2 and 3.

Three real estate dealers testified. Witness Gilbert testified the value of the remainder was $40,941.70, which included the improvements at a $5,700 value, before and $23,200 after the taking. Hall testified the value of the remainder was $37,600 before and $37,600 after the taking, which included a $7,500 value on the improvements. McKnight testified the value of. the remainder was $25,217.50 both before and after the taking.

Some of the witnesses testified that after the construction of the ditch the property drained better than before. This testimony was contradicted by appellants.

The evidence was undisputed that the highest and best use of the property was for residential purposes.

The appellants argue that McKnight did not include the value of the improvements in his testimony as to value of the remainder, and therefore, since the jury's findings were below the testimony of value given by Gilbert and Hall, the answers are not supported by the evidence. On direct examination McKnight testified the remainder had a value of $25,217.50 before the taking, and the same value after the taking. On cross examination, in answer to a question as to his opinion value on the building, he answered he would take the building off for the best use of the land. While it is not clear whether he considered the building separately, it is clear that he did not consider the building as being depreciated by the taking of the 30 foot strip, for he testified positively that the drainage ditch helped the "property".

■ The jury was properly instructed to find the market value of the remainder before and after the taking. City of Austin v. Cannizzo, 153 Tex. 324, 267 S.W.2d

808; State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194.

■ It was within the jury's province to judge the credibility of the witnesses and the weight to be given their testimony, and to resolve conflicts and inconsistencies in the testimony of any one witness as well as the testimony of different witnesses. Austin Fire Ins. Co. v. Adams-Childers Co., Tex.Com.App., 246 S.W. 365. The trier of facts can accept in part and reject in part the conclusions of an opinion witness. The jury could accept the opinions of Gilbert and Hall as to the values they placed on the improvements, but reject their conclusions as to the value of the land. They could accept McKnight's opinion as to the value of the land. Moreover, the court will look to all the testimony of the witness to determine its legal sufficiency to support the findings of judge or jury that are essential to the case of the prevailing party. Travelers Ins. Co. v. Blazier, Tex.Civ.App., 228 S.W.2d 217. McKnight, in referring to the ditch, said: " * * * in my opinion it helps the property." Bearing in mind the question to be determined was the before and after market value of the remainder, it is obvious the witness was testifying that the "property", not merely the land, was not diminished in value by reason of the construction of the drainage ditch.

■ The jury, in answer to issues Nos. 2 and 3, did not choose to accept the figures of any one witness. The jury may weigh, consider and accept or reject opinion evidence or it may form its own opinion from the evidence. McCarthy v. City of Amarillo, Tex.Civ.App., 307 S.W.2d 595. The jury, on sufficient evidence, accepted the conclusions of McKnight and Hall that the market value of the remainder had not been diminished. We think the evidence clearly supports the findings and points 1 to 10 are accordingly overruled.

■ The appellants assign as error the refusal of the court to permit a plat in

evidence which depicted the property as a subdivision. The plat was prepared during the lifetime of Mrs. Varnado's husband. There had never been a dedication or filing of the plat. The witnesses were allowed to testify fully as to the plan of subdivision as depicted on the plat, including size and number of lots; that three proposed lots had been staked off; that the easement would necessarily decrease the number of lots, etc. All witnesses agreed the highest and best use of the tract was for subdivision purposes. The witnesses were not limited in their testimony showing that the tract was adaptable to use as a subdivision and its value because of such adaptability. Under the record it was not reversible error to exclude the plat. Rule 434, Texas Rules of Civil Procedure.

In points 12 and 13 appellants contend the trial court erred in sustaining testimony of Gilbert concerning his calculations and processes used in determining the value of the property, and in sustaining an objection to testimony on cross-examination of McKnight concerning the number of lots and value of such lots in a proposed residential subdivision of the land in question. Gilbert testified, "I cut that up in a subdivision, on paper, two different ways * * *." Appellee objected to the witness going into mental calculation about a "hypothetical subdivision". The objection was sustained. Otherwise the witness was not restricted in his testimony. No error is shown. The statement of facts reveals that McKnight was permitted to testify concerning the number of lots into which the land could be divided, but was not permitted to testify what they would be worth. Such future value would be too uncertain and conjectural to be considered in determining the before and after market value of the land. The record does not show that the question was asked for the purpose of impeachment or to test the credibility of the witness. In view of the wide latitude allowed appellants in the cross-examination of the witness, the ruling, if error, was not such error as was calculated to cause and probably did cause the rendition of an improper verdict. Points 12 and 13 are overruled.

In other points appellants argue the court erred in sustaining objections to questions asked McKnight and Hall as to whether there was anything to keep raw sewage from entering the drainage ditch. The witnesses had previously answered the same or similar questions concerning raw sewage. The chief purpose of cross-examination being to test the accuracy and credibility of the witness, it is obvious that the manner of the cross-examination and its extent must rest largely in the discretion of the trial judge. Texas Law of Evidence, McCormick & Ray, Second Ed., Vol. 1, p. 462, sec. 592. There is no showing the trial judge abused his discretion in the rulings of which complaint is made.

Points 16 and 17 challenge the competency of the witness Hall to testify as an expert, and the processes by which he arrived at his opinion as to value. Hall's testimony occupies 71 pages of the statement of facts. Our study of said testimony convinces us the trial court did not err in holding Hall to be a competent witness, or in his ruling on the evidence given by Hall.

The appellants were awarded $5,500 by special commissioners. The appellants filed their objection with the County Judge. In compliance with art. 3268, Vernon's Ann.Civ.St., appellee paid the above amount into court. The final judgment for appellants in the County Court was for $4,730 (the value of the land actually taken under the easement). The judgment decreed that appellee recover of appellants the sum of $770, being the excess amount of the deposit over the final award. Appellants allege as error that part of the judgment since appellee had no pleadings for same. Section 3 of art. 3268 provides: " * * * in any case where the award paid the defendant or appropriated by him exceeds the value of the prop-

erty as determined by the final judgment, the court *shall adjudge* the excess to be returned to the plaintiff." (Emphasis added.) The amount of the commissioners' award was deposited into court by appellee, not as payment of said award but in compliance with the law permitting it to go into possession of the property condemned pending final determination of the condemnation proceedings. It seems to us that in ordering the excess returned to appellee the court was merely doing what the statute required him to do.

Finding no reversible error in the record, the judgment of the trial court is affirmed.