Opinion issued October 28, 2004









                                              

In The
Court of Appeals
For The
First District of Texas




NO. 01-03-00865-CV




CAPTAIN SHERIFF SAUDI, Appellant

V.

CAPTAIN IVO BRIEVEN, Appellee




On Appeal from the 127th District Court
Harris County, TexasTrial Court Cause No. 99-06515




O P I N I O N

          This is the second appeal in this lawsuit. Appellant, Captain Sheriff Saudi,
sued appellee, Captain Ivo Brieven, for defamation (libel and slander), intentional
interference with employment relations (“intentional-interference claim”), and
intentional infliction of emotional distress (“IIED”). The trial court granted Brieven’s
motion for summary judgment and rendered a take-nothing judgment against Saudi. 
The Fourteenth Court of Appeals reversed the judgment and remanded the cause
because fact issues existed on Saudi’s defamation claims. See Saudi v. Brieven, 2003
WL 1989112, 14-01-00785-CV (Tex. App.—Houston [14th Dist.] May 1, 2003, no
pet.) (memo. op.). On remand, Brieven reasserted his summary judgment motion, and
the trial court granted it, again rendering a take-nothing judgment against Saudi. In
this second appeal, we determine whether (1) the trial court’s summary judgment was
void and (2) Brieven proved his affirmative defense of qualified privilege to Saudi’s
defamation claims as a matter of law. We affirm.
Background
          This dispute arose from a relationship among I. B. Marine Services (“IBMS”),
American Eagle Tankers (“American”), and Industrial Material Corporation
(“Industrial”). Brieven either owned, or operated and was an officer of, IBMS. 
American employed Saudi as a mooring master.
          The summary judgment evidence on remand showed two incidents from which
Saudi’s defamation claims could have arisen. First, at a meeting held on June 18,
1998 between IBMS and American employees, Brieven told these third parties that
Saudi engaged in waking the boat crew at inappropriate times and for inappropriate
purposes and called one surveyor a “stupid American.”
          Second, in September 1998, Brieven’s port engineer informed Brieven that he
had learned that someone matching Saudi’s description had purchased hooks from
Industrial and had charged the purchase to IBMS’s account without authorization. 
The purchaser also appeared to have stolen some items. Brieven then contacted
Captain Violetta, Saudi’s supervisor at American; related the accusations to him;
specifically accused Saudi of the purchase; and asked if a procedure could be
instituted in the future that would let Brieven know when mooring masters charged
items to IBMS’s account. When Violetta later called Brieven to confirm the
allegation because Saudi continuously had denied it, Brieven told Violetta, “Yes, I
am sure. [Saudi] is a liar. He is lying through his teeth.” In fact, American never had
authorized its mooring masters to purchase items on IBMS’s account, and Brieven’s
accusations against Saudi concerning the purchase eventually were determined to be
false.
          Saudi sued Brieven, asserting defamation, intentional-interference, and IIED
claims arising from the September 1998 phone call to Violetta and from unspecified
incidents in which Brieven allegedly “made false accusations against [Saudi] to third
parties in an effort to create hate and resentment between the ‘boat crew’ and [Saudi]
. . . .” Brieven moved for summary judgment against all claims, specifically asserting
the affirmative defense of qualified privilege to the defamation claims. The trial court
originally rendered judgment against each of Saudi’s three claims. In the first appeal,
the Fourteenth Court of Appeals (1) held that the trial court had erred in rendering
summary judgment on Saudi’s defamation claims; (2) held that the trial court had
properly rendered summary judgment on Saudi’s intentional-interference claim; and
(3) did not address the summary judgment rendered on Saudi’s IIED claim. Id. at *3-6. The appellate court reversed the entire judgment and remanded the cause without
limitation.
          On remand, Brieven reasserted his entire summary judgment motion, which
addressed all three claims, and requested a written ruling on his objections to Saudi’s
summary judgment evidence. In response, Saudi reurged his original summary
judgment response and tendered two more affidavits in support, to which Brieven
also objected. The trial court sustained Brieven’s objections to Saudi’s evidence, in
effect striking most of Saudi’s four affidavits’ testimony; granted Brieven’s summary
judgment motion; and rendered a take-nothing judgment against Saudi.



Jurisdiction
          In part of his sole issue, Saudi argues that the trial court’s summary judgment
is void for having been rendered after the appellate court had issued its judgment, but
before it had issued its mandate. Brieven responds that the trial court had jurisdiction
to render judgment and, alternatively, that Saudi either waived his challenge or is
estopped from asserting it.
          The Fourteenth Court of Appeals’s opinion and judgment issued on May 1,
2003. The trial court rendered summary judgment on July 21, 2003, without
objection by Saudi. The appellate court’s mandate issued August 7, 2003.
          “Subject matter jurisdiction cannot be conferred by consent, waiver, or estoppel
at any stage of a proceeding.” Tourneau Houston, Inc. v. Harris County Appraisal
Dist., 24 S.W.3d 907, 910 (Tex. App.—Houston [1st Dist.] 2000, no pet.) (citing Fed.
Underwriters Exch. v. Pugh, 174 S.W.2d 598, 600 (Tex. 1943)). Lack of subject-matter jurisdiction is fundamental error that may be recognized by the appellate court,
sua sponte, or raised by a party, by appellate challenge, for the first time on appeal. 
See id.; Britton v. Tex. Dep’t of Criminal Justice, 95 S.W.3d 676, 681 n.6 (Tex.
App.—Houston [1st Dist.] 2002, no pet.) (“In an appeal properly before it, an
appellate court may always address fundamental error, even without an appellate
challenge.”). “A judgment is void only when it is apparent that the court rendering
judgment ‘had no jurisdiction of the parties, no jurisdiction of the subject matter, no
jurisdiction to enter the judgment, or no capacity to act as a court.’ Errors other than
lack of jurisdiction render the judgment merely voidable . . . .” Cook v. Cameron, 733
S.W.2d 137, 140 (Tex. 1987) (quoting Browning v. Placke, 698 S.W.2d 362, 363
(Tex. 1985)). Accordingly, the trial court’s summary judgment is void, and Saudi
may assert his challenge for the first time on appeal, only if the court lacked subject-matter jurisdiction at the time of the judgment’s rendition.
          The Rules of Appellate Procedure and Texas Supreme Court jurisprudence
support Brieven’s position, not Saudi’s. 
A.      The Rules
          As of September 1, 1997, the Rules of Appellate Procedure provide that an
appellate court’s plenary power over its judgment expires “(a) 60 days after judgment
if no timely filed motion to extend time or motion for rehearing is then pending; or
(b) 30 days after the court overrules all timely filed motions for rehearing and motions
to extend time to file a motion for rehearing . . . .” Tex. R. App. P. 19.1. No one in
this cause moved for rehearing in the court of appeals. Accordingly, the Fourteenth
Court of Appeals’s plenary power expired on July 1, 2003, 60 days after its judgment
issued. See id. 
          Under separate rules, the appellate court must issue its mandate in a civil case
when, for example (and absent the parties’ agreement otherwise), 10 days have passed
(1) since the deadline expired for filing a motion to extend time to file a petition for
review in the Supreme Court (a) if no timely petition for review has been filed and
(b) if no timely motion for extension of time to file a petition for review is pending
or (2) since the deadline expired for filing a motion to extend time to file a motion for
rehearing of a denial, refusal, or dismissal of a petition for review, if no timely filed
motion for rehearing or extension is pending. Tex. R. App. P. 18.1(a)(1)-(3). Here,
no one filed a petition for review or a motion for extension of time to file one.
          Generally speaking, and with certain exceptions inapplicable here,


 once an
appeal has been perfected and the trial court’s plenary power to perform certain acts
after appeal has expired, the appellate court acquires exclusive plenary jurisdiction
over the cause. See Robertson v. Ranger Ins. Co., 689 S.W.2d 209, 210 (Tex. 1985);
see also Tex. R. Civ. P. 329b(d), (e) (granting trial court plenary power to perform
certain acts despite appeal’s perfection); Tex. R. App. P. 25.1(b) (“The filing of a
notice of appeal by any party invokes the appellate court’s jurisdiction over all parties
to the trial court’s judgment or order appealed from.”). The court of appeals’s plenary
jurisdiction ends, however, as provided in Rule of Appellate Procedure 19. In
contrast, rule 18 concerns the issuance and return of mandate, but does not govern the
appellate court’s plenary power. A comparison of rules 18 and 19 thus demonstrates
that rule 18 is procedural, rather than jurisdictional, in nature. Furthermore, the
appellate rules provide that “[a]fter its plenary power expires, the [appellate] court
cannot vacate or modify its judgment. But the court may: . . . (b) issue and recall its
mandate as these rules provide.” Tex. R. App. P. 19.3(b). Since rule 19’s adoption,
the fact that the rules allow the appellate court to issue and to recall its mandate after
the appellate court’s plenary power expires indicates that it is not the mandate’s
issuance that generally reinvests the trial court with jurisdiction, but, instead, the
termination of plenary power in the appellate court under rule 19.1. 
          In support of his position, Saudi relies on Rule of Appellate Procedure 18.7,
which provides: 
 
If an appellate court vacates or modifies its judgment or order after
issuing its mandate, the appellate clerk must promptly notify the clerk
of the court to which the mandate was directed and all parties. The
mandate will have no effect and a new mandate may be issued.

Tex. R. App. P. 18.7. Contrary to Saudi’s contention, rule 18.7 says nothing about
reinvesting a trial court with jurisdiction, and it does not support him. 
B.      The Case Law
          Case law supports our reading of the rules. In 1963, the Texas Supreme Court
held that the statutes and rules concerning the mandate’s return are “primarily
procedural in nature . . . ,” rather than jurisdictional. Continental Cas. Co. v. Street,
364 S.W.2d 184, 187 (Tex. 1963). In Street, the court of civil appeals held that the
trial court’s judgment was void because the trial upon which judgment was rendered
had been held before the appellate court’s mandate had been returned. Id. at 186. 
The Texas Supreme Court reversed the court of civil appeals:
The rules relating to the return of the mandate from the appellate to the
trial court are taken from predecessor statutes . . . . These statutes were
construed as being primarily procedural in nature. They provide for an
orderly dispatch of judicial business by adopting procedures under
which both the appellate and trial courts may have knowledge of the
status of pending litigation and thus prevent the issuance of conflicting
orders by the courts of the trial and appellate levels. In the absence of
an actual interference with the appellate court’s authority over a case,
the provisions relating to the return of the mandate do not appear to
have been regarded as jurisdictional in the sense that any action taken
by a trial court before the return of the mandate must be considered a
nullity.
 
. . .
 
It is recognized that prior to the issuance of a mandate the
appellate court retains a species of jurisdiction of a case although it has
rendered its judgment and overruled a motion for rehearing and that a
writ of prohibition may issue to the trial court forbidding it to proceed
to trial before the appellate court has issued its mandate. . . . In order to
properly preserve the complaint of procedural irregularity in
proceeding to trial before the return of the mandate, it is necessary that
proper objection be made in the trial court, or that application for
prohibition be made to the Court of Civil Appeals. It is only when there
is an actual interference with the appellate court’s active power and
authority over the case by a trial court order that the same can be
considered void so as to constitute a fundamental error. 

Id. at 187-88 (footnotes omitted; citations omitted; emphasis added); accord Universe
Life Ins. Co. v. Giles, 982 S.W.2d 488, 491 (Tex. App.—Texarkana 1998, pet. denied)
(following Street). As with the language of current rule 18, the language of rule 18’s
predecessors that were considered by the Street court was also procedural.


 See
Street, 364 S.W.2d at 187-88 & 187 n.2. The Texas Supreme Court affirmed the
continued validity of Street in Brazzel v. Murray, 481 S.W.2d 801, 803 (Tex. 1972),
in which the court stated, “The Texas Rules of Civil Procedure dealing with the
issuance and return of the mandate subsequent to judgment of remand in the Court
of Civil Appeals are procedural in nature and not necessary to the jurisdiction of the
trial court.”
          Some commentators have suggested that two subsequent Texas Supreme Court
opinions implicitly overrule Street and Brazzel. See Stacy Obenhaus, It Ain’t Over
‘Til It’s Over: The Appellate Mandate in Texas Courts, The Appellate Advocate, Vol.
XV, No. 4, at 7 & 7 n.31 (Winter 2003) (stating same expressly); see also 6 Roy W.
McDonald & Elaine A. Grafton Carlson, Texas Civil Practice § 46:5 (2nd
Ed. 1998) (citing to two opinions issued after Street and Brazzel to support statement
that “[o]nce an opinion is issued, jurisdiction over the subject matter involved in the
appeal remains in the appellate court until the mandate has issued by that court.”). 
We disagree.
          The first opinion cited as having implicitly overruled Street and Brazzel is
Robertson v. Ranger Insurance Co., 689 S.W.2d 209 (Tex. 1985). In
Robertson—which mentioned neither Street nor Brazzel—the court held void a post-settlement consent judgment that the trial court rendered while a rehearing motion in
the same cause was still pending before the Texas Supreme Court. Id. at 210. The
Robertson court held that “[t]he trial court had no power to change or [to] modify its
judgment once an appeal had been taken . . .” and that the consent judgment was void
for its having been rendered while the Texas Supreme Court still “had exclusive
plenary jurisdiction over the case” by virtue of the rehearing motion’s pendency. Id. 
Robertson, however, did not involve the issue of whether a trial court had jurisdiction
to render a judgment after the appellate court had issued its judgment and the
appellate court’s plenary power had expired.
          We likewise distinguish the second opinion sometimes cited as having
implicitly overruled Street and Brazzel: In re Long, 984 S.W.2d 623 (Tex. 1999)
(orig. proceeding). Like Robertson, In re Long does not mention Street or Brazzel. 
In Long, the district clerk sought mandamus relief from a judgment of contempt for
his having collected fees in contravention of a trial-court injunction. Id. at 624. The
trial court had rendered judgment enjoining the clerk from collecting certain fees, and
both parties had appealed. Id. The appellate court modified the judgment, affirmed
the judgment as modified, and overruled the parties’ rehearing motions on July 11,
1994. Id. The clerk did not seek Texas Supreme Court review, but the other party
did. Id. After the Texas Supreme Court had denied petition for review and rehearing
on the petition, the court of appeals’s mandate issued on February 13, 1995. Id. The
trial court then held the clerk in contempt for having collected the disputed fees from
the date that the court of appeals had overruled the parties’ rehearing motions (July
11, 1994) through the date that the clerk had actually stopped collecting the fees
(April 1, 1995). Id. The Texas Supreme Court granted mandamus relief for the
contempt penalties assessed from the period of July 11, 1994 through the date that
mandate had issued in the court of appeals (February 13, 1995). Id. at 624-25. The
court held:
Absent an order to the contrary by the trial court or an appellate court,
the Clerk could not be held in contempt for violating the injunction until
all appeals relating to the judgment were exhausted and a mandate
enforcing the judgment was issued. . . . [T]he clerk was not obligated
to comply with the injunction until the appeals were final and mandate
issued on February 13, 1995.

Id. at 626. 
          The Long opinion stands for the proposition that a court official may not be
required, through mandamus or otherwise, to enforce an appellate court judgment
until the mandate has issued. That holding comports with the function of a mandate. 
“A mandate is the official notice of the action of the appellate court, directed to the
court below, advising it of the action of the appellate court and directing it to have its
judgment duly recognized, obeyed, and executed.” Lewelling v. Bosworth, 840
S.W.2d 640, 642 (Tex. App.—Dallas 1992, orig. proceeding); accord In re Marriage
of Grossnickle, 115 S.W.3d 238, 243 (Tex. App.—Texarkana 2003, no writ) (quoting
Lewelling). The mandate has also been described as “a command of the court, which
the court is authorized to give and which must be obeyed.” Williams v. State, 899
S.W.2d 13, 15 (Tex. App.—San Antonio 1995, no writ); see Black’s Law
Dictionary at 980 (8th ed. 2004) (defining “mandate” as “an order from an appellate
court directing a lower court to take a specified action.”). The mandate is thus the
means of enforcing the appellate court’s judgment. Accordingly, “[t]he writ of
mandamus will issue to compel compliance with the mandate of the Court of
Appeals.” Schliemann v. Garcia, 685 S.W.2d 690, 692 (Tex. App.—San Antonio
1984, no writ). Long is consistent with this line of authority because the court held
that a court official could not be compelled by the extraordinary writ of mandamus
to comply with an appellate decision for which mandate had not yet issued. However,
Long does not concern whether a trial court has subject-matter jurisdiction voluntarily
to comply with an appellate court’s judgment after the appellate court’s plenary power
expires and all appeals have been exhausted, but before mandate issues. Accordingly,
Long does not overrule Street or Brazzel.
          Because no motions for rehearing or motions for extension of time to file
rehearing were filed in the court of appeals, and because no petition for review was
filed with the Texas Supreme Court, the appellate court lost jurisdiction, and the trial
court generally regained its jurisdiction, no later than July 1, 2003, 60 days after the
appellate court’s judgment issued. See Tex. R. App. P. 19.1(a). The trial court’s
judgment upon remand issued after those dates, and that judgment did not actually
interfere with the appellate court’s active power and authority over the cause. 
Accordingly, the trial court had subject-matter jurisdiction to render the judgment
from which appeal is taken. See Street, 364 S.W.2d at 187-88; see also Brazzel, 481
S.W.2d at 803. Because the trial court had subject-matter jurisdiction to render its
judgment, that judgment was not void. See id. 
          We overrule this challenge under Saudi’s issue.
                    Defamation
          In the remainder of his issue, Saudi argues that the trial court erred in granting
Brieven’s motion for summary judgment because Brieven did not carry his summary
judgment burden of proving his qualified privilege.
A.      Standard of Review and Burden of Proof
          Brieven moved for traditional summary judgment. See Tex. R. Civ. P. 166a(c). 
Summary judgment under rule 166a(c) is proper only when a movant establishes that
there is no genuine issue of material fact and that he is entitled to judgment as a
matter of law. Randall’s Food Mkts., Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex.
1995). A defendant is entitled to summary judgment if the evidence disproves as a
matter of law at least one element of each of the plaintiff’s causes of action or if it
conclusively establishes all elements of an affirmative defense. Id.
          In our review, we indulge every reasonable inference in favor of the
nonmovant, resolve any doubts in its favor, and take as true all evidence favorable to
it. Id. When an order granting summary judgment does not specify the grounds upon
which the trial court ruled, we must affirm to the extent that any of the summary
judgment grounds is meritorious. See Star-Telegram, Inc. v. Doe, 915 S.W.2d 471,
473 (Tex. 1995).
B.      Qualified Privilege
          To maintain a defamation cause of action, the plaintiff must prove that (1) the
defendant published a false statement about the plaintiff; (2) the statement was
defamatory concerning the plaintiff; and (3) the defendant acted with either actual
malice, if the plaintiff was a public official or public figure, or negligence, if the
plaintiff was a private individual, regarding the truth of the statement. WFAA–TV,
Inc. v. McLemore, 978 S.W.2d 568, 571 (Tex. 1998). However, a qualified privilege
to make a statement exists when “the person making the statement . . . make[s] it in
good faith on a subject matter in which the speaker has a common interest with the
other person, or with reference to which the speaker has a duty to communicate to the
other.” Grant v. Stop-N-Go Mkt. of Tex., Inc., 994 S.W.2d 867, 874 (Tex.
App.—Houston [1st Dist.] 1999, no pet.); accord E. Tex. Med. Ctr. Cancer Inst. v.
Anderson, 991 S.W.2d 55, 60 (Tex. App.—Tyler 1998, pet. denied). The privilege
does not apply if the information is furnished to others not sharing the common
interest. See Dun & Bradstreet, Inc. v. O’Neil, 456 S.W.2d 896, 898-99 (Tex. 1970);
Grant, 994 S.W.2d at 874. 
          The privilege is also defeated if the defendant makes the statement with actual
malice. Grant, 994 S.W.2d at 874. “The privilege is abused if the statement is made
with actual malice—that is, it is made with knowledge of its falsity or with reckless
disregard as to its truth.” Grant, 994 S.W.2d at 874. “Malice . . . cannot be inferred
from falsity of the statement alone.” Martin v. Southwestern Elec. Power Co., 860
S.W.2d 197, 200 (Tex. App.—Texarkana 1993, writ denied). “An uncontroverted
affidavit by the person publishing the statement that indicates the statement was not
made with actual malice is sufficient to meet the burden to negate actual malice as a
matter of law.” Assoc. Press v. Cook, 17 S.W.3d 447, 458 (Tex. App.—Houston [1st
Dist.] 2000, no pet.).
          Brieven had the burden to prove conclusively his affirmative defense of
qualified privilege, including proving the lack of malice. See Cook, 17 S.W.3d at
458; Grant, 994 S.W.2d at 864; Martin, 860 S.W.2d at 199.
          Brieven produced his affidavit, which is quoted in the opinion of the
Fourteenth Court of Appeals, in support of his defense. See Saudi, 2003 WL
1989112, at *3. Saudi does not complain on appeal that Brieven’s affidavit testimony
was conclusory, that it was incontrovertible, that it lacked foundation, or that it came
from an interested witness, and he did not object to the testimony otherwise below or
on appeal. 
          1.       Common Interest
          We agree with the Fourteenth Court of Appeals that Brieven’s affidavit carried
his burden to show an “interlocking business relationship” among IBMS, American,
and Industrial, so that Brieven’s statements both at the June 18, 1998 meeting and in
the September 1998 phone call were made only to those with a common business
interest. See id. Additionally, Saudi’s affidavit evidence that was not struck
supported Brieven’s testimony or at least did not raise a fact issue on common
interest.
          Saudi nonetheless responds that the trial court erred in rendering summary
judgment because, in doing so, the court violated the law-of-the-case doctrine. “The
‘law of the case’ doctrine is that principle under which questions of law decided on
appeal to a court of last resort will govern the case throughout its subsequent stages.” 
Lee v. Lee, 44 S.W.3d 151, 153 (Tex. App.—Houston [1st Dist.] 2001, pet. denied)
(quoting Hudson v. Wakefield, 711 S.W.2d 628, 630 (Tex. 1986)). A decision
rendered in a prior appellate opinion in the same case does not absolutely bar
reconsideration of the same issue on a second appeal if the issues and facts are not
substantially the same in the subsequent proceeding. Hudson, 711 S.W.2d at 630. 
Similarly, if the appellate court’s prior decision is clearly erroneous, the subsequent
court is not required to adhere to the ruling. See Briscoe v. Goodmark Corp., 102
S.W.3d 714, 716 (Tex. 2003). The doctrine’s application lies within the discretion of
the trial court, depending on the particular circumstances of the case. Id. 
          Here, no one raised law of the case as a summary judgment ground or argument
upon remand. Assuming without deciding that we can consider this argument despite
its not having been raised below,


 we hold that the doctrine did not preclude the trial
court from rendering judgment for Brieven. The doctrine does not apply if the
pertinent facts are not substantially the same in the two proceedings. Hudson, 711
S.W.2d at 630. The pertinent facts are not substantially the same because, on remand,
the trial court struck the sole evidence on which the Fourteenth Court of Appeals had
held that a fact issue existed—a single statement in Saudi’s affidavit. See Saudi,
2003 WL 1989112, at *4-5. Without any controverting evidence upon remand,
Brieven’s affidavit carried his burden. The law-of-the-case doctrine thus did not
apply.
          Accordingly, we reject Saudi’s argument that the trial court erred in rendering
summary judgment because of the law-of-the-case doctrine.
 
          2.       Actual Malice
          Saudi alternatively argues that Brieven’s qualified-privilege defense fails
because Brieven’s defamatory statements were made with actual malice. Specifically,
Saudi argues that “malice can be inferred where, as here, the false allegations are
recklessly based wholly on an unverified anonymous informant.”
           Brieven’s affidavit stated that he based his accusations concerning the
unauthorized purchases on information from his own port engineer, Gilbert; that none
of his statements was made with malice or ill will; that he raised his concerns “in
good faith, based on [his] reasonable belief of the truthfulness of the information”;
that he did not know any of the statements to have been false; and that he did not
make any statements “with reckless disregard as to whether they were false.” Given
that Saudi does not complain on appeal, and did not complain below, that Brieven’s
affidavit was conclusory, came from an interested witness, lacked foundation, was
incontrovertible, or was objectionable for any other reason on the issue of malice, this
testimony sufficed to carry Brieven’s burden to disprove actual malice. See Cook, 17
S.W.3d at 458 (“An uncontroverted affidavit by the person publishing the statement
that indicates the statement was not made with actual malice is sufficient to meet the
burden to negate actual malice as a matter of law.”).
 
          Additionally, Brieven did not rely “wholly on an unverified anonymous
informant”; rather, the summary judgment evidence shows that he relied on
information received by Gilbert, his own employee, and Brieven’s affidavit does not
state that Gilbert’s information came from an “unverified anonymous informant.”


 
          Accordingly, we hold that Brieven conclusively proved the lack of actual
malice with respect to his qualified-privilege defense. 
          3.       Evidentiary Rulings
           We also hold that Saudi has not properly raised challenges to the trial court’s
evidentiary rulings on remand. Only the following statements from Saudi’s opening
brief are pertinent to the trial court’s evidentiary rulings: (1) “The trial court . . . held
that the affidavits of Saudi, Captain Violetta, and Emlyn Jones, were inadmissible
hearsay. The Trial Court’s reasoning is flawed.”; (2) “Brieven’s defamatory
statements which he made on June 18, 1998 . . . are admissions . . . .”; and (3) “All
of Brieven’s defamatory statements qualify as admissions and were not hearsay.” His
opening brief contains no authority or discussion whatsoever on the propriety of the
evidentiary rulings, other than those few statements quoted. It is not until his reply
brief that Saudi cites to any authority, and then he cites only to one rule: “In order to
prevail on this appeal, Brieven must obtain a holding that admissions of a party
opponent are hearsay. Brieven’s statements to either Saudi or other . . . witnesses are
not hearsay . . . . See Tex. R. Evid. 801(e)(2).” 
          This is the entirety of Saudi’s analysis of the matter, and it does not suffice to
raise a proper challenge. In the trial court, Brieven objected to two paragraphs in one
of Saudi’s affidavits, to 11 paragraphs in two others, and to eight paragraphs in the
fourth affidavit. Brieven objected on various grounds—hearsay, irrelevancy, lack of
foundation or factual basis, mere opinion, speculation, conclusoriness, lack of
personal knowledge, and the contradictory nature of certain allegations—to various
portions of all four affidavits. The trial court sustained all of Brieven’s objections. 
Saudi offers no analysis of which specific rulings he challenges, does not explain to
which portions of which affidavits his challenges relate, and offers no authority or
even discussion of any basis for Brieven’s objections except for his one hearsay
assertion. Given the paucity of Saudi’s briefing, the fact that he cited no authority
until his reply brief, and the fact that he provides virtually no analysis on the portions
of the struck affidavits that he challenges, we hold that he has waived any challenges
to the trial court’s evidentiary rulings for lack of adequate briefing. See Tex. R. App.
P. 38.1(h); Franz v. Katy Indep. Sch. Dist., 35 S.W.3d 749, 755 (Tex. App.—Houston
[1st Dist.] 2000, no pet.). 
          Moreover, with respect to Saudi’s party-opponent hearsay argument, we would
overrule that challenge in any event: the few affidavit paragraphs to which that rule
might be relevant were not excluded on the basis of hearsay.
          We overrule the remainder of Saudi’s issue.



Conclusion
          We affirm the judgment of the trial court.


                                                                        Tim Taft
                                                                        Justice

Panel Consists of Justices Taft, Jennings, and Bland.